## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEIGHTON BUDDER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CIV-13-180-HE |
| ) | |
| MIKE ADDISON, Warden, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). The Respondent has filed a Response (hereafter ECF No. 20), to which Petitioner has filed a Reply (hereafter ECF No. 27). For the reasons set forth below, it is recommended that the Petition (hereafter ECF No. 1) for habeas relief be **GRANTED in part and DENIED in part**.

## I.    BACKGROUND[1]

Petitioner was tried and convicted on two charges of First Degree Rape, Assault and Battery with a Deadly Weapon and Forcible Oral Sodomy, Case No. CF-2009-269, District Court of Delaware County, State of Oklahoma. Petitioner was 16 years old when he committed these crimes. On each of the rape counts, Petitioner was sentenced to life imprisonment without the possibility of parole. On the count of assault and battery with a deadly weapon, he was sentenced to life imprisonment with the possibility of

---

[1] This summary is prepared for background purposes only and taken from the opinion of the Oklahoma Court of Criminal Appeals (ECF No. 20-4); record citations will be provided as they are relevant to the discussion of the issues.

parole. On the count of forcible oral sodomy, he was sentenced to twenty years imprisonment. The trial court ordered that each of these sentences should run consecutively.

K.J., the victim in this case and a high school student at the time, testified that on the evening of August 10, 2009, she was having a party at her house to celebrate the beginning of school. Petitioner arrived at the party, though he had not specifically been invited. During the party, K.J. text messaged several individuals that she was "drunk," "pretty drunk" and "very drunk" but at trial, K.J. testified that she had lied to those people and had only had two beers and one drink of something banana-flavored. At the end of the night, K.J. offered to give two friends a ride home and Petitioner also asked K.J. to give him a ride.

K.J. dropped off the two friends and thought Petitioner was going to get out of the car at the home of the second friend. Instead, Petitioner got into the front seat of the vehicle and asked K.J. to drive him to his aunt's house. While they were on a dirt road, Petitioner put his arm around K.J.'s head and cut her throat. As she struggled, he continued to stab her. K.J. unlocked the driver's side door and dove out of the vehicle and onto the road. Petitioner followed after her by sliding out of the driver's side door of the moving vehicle.

Petitioner punched K.J. in her face and slammed her head against rocks on the road. K.J. blacked out and when she could refocus, she realized Petitioner was taking off her shorts and underwear. Petitioner then raped K.J. both vaginally and anally then forced her to sodomize him. Afterward, K.J. heard Petitioner snoring. K.J. then ran to a

house she saw on the road and was able to obtain help to call law enforcement and medical personnel. In addition to the injuries associated with the violent sexual assaults, and the slicing wound to her neck, K.J. suffered approximately seventeen stab wounds.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). While Petitioner's appeal was pending, the United States Supreme Court issued its decision in *Graham v. Florida*, 560 U.S. 48 (2010), wherein the court held that the Eighth Amendment's prohibition against cruel and unusual punishment dictated it is unlawful to sentence an individual to life without the possibility of parole for acts he committed while he was a juvenile. *Id.* at 82. The OCCA affirmed Petitioner's convictions. However, based on *Graham* and recognizing Petitioner was sixteen years of age when the underlying crimes were committed, the OCCA modified Petitioner's sentences with regard to each of his rape convictions from life without the possibility of parole to life with the possibility of parole.[2] The OCCA left each of Petitioner's four sentences as running consecutively.

## II.    GROUNDS FOR FEDERAL HABEAS CORPUS RELIEF

Petitioner raises two grounds for habeas corpus relief and each of these grounds were also raised during his appellate process to the OCCA.

(1)    Petitioner's sentences, as applied, violate the Eighth Amendment's prohibition against cruel and unusual punishment, as established in *Graham v. Florida*, 560 U.S. 48 (2010). (ECF No. 1:5-10)

---

[2] Applying *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) and *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), the OCCA recognized that because *Graham* was issued while Petitioner's appeal was pending there was no question that the ruling therein applied to Petitioner's case. (ECF No. 20-4:8-9) ("When a decision of the U.S. Supreme Court results in a "new rule," that rule applies to all criminal cases still pending on direct review.").

(2)     Petitioner was prejudiced by ineffective assistance of trial counsel based on counsel's failure to introduce mitigating evidence. (ECF No. 1:11-21).

## III.     STANDARD OF REVIEW

The standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) (AEDPA) applies to all grounds for habeas relief raised in this action. Under AEDPA, a petitioner is entitled to federal habeas relief only if an adjudication on the merits by a state's highest court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *Id.* (28 U.S.C. § 2254 (d)(1)). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotation and citation omitted). This Court must first determine "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

"Clearly established law" consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state

court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). A decision is an unreasonable application of federal law if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of a petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "As a condition for obtaining federal habeas relief, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## IV. ANALYSIS

### A. Ground One: Petitioner's Aggregate Sentences Violate the Eighth Amendment

In *Graham*, the Supreme Court held that a sentence of life without parole is unconstitutional for a juvenile offender and that if a state "imposes a sentence of life [on a juvenile offender] it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id.* at 82. As previously noted, the OCCA applied *Graham* and without elaboration, stated, "Appellant's sentences [of life without the possibility of parole] are modified to life imprisonment with the possibility of parole." (ECF No. 20-4:9).[3] As his sentences currently stand, Petitioner is serving three

---

[3] Following the OCCA's ruling on Petitioner's appeal, he filed a Petition for Rehearing with the OCCA in which he argued that it "failed to fully address all aspects of [Petitioner's] arguments that were based on *Graham*." (ECF No. 20-5:1). In denying the Petition, the OCCA merely stated that it fully considered all of Petitioner's arguments initially raised in his appeal. (ECF No. 20-5:2).

sentences of life with the possibility of parole, as well as a twenty-year sentence, each running consecutively.

Under Oklahoma law, an inmate convicted of Petitioner's crimes must serve 85% of a sentence before being considered eligible for parole. Okla. Stat. tit. 21, §§ 12.1, 13.1. Parole eligibility on a life sentence is calculated based on a 45-year sentence. *See Anderson v. Okla.*, 130 P.2d 273, 282 (Okla. Crim. App. 2006) ("The Oklahoma Pardon and Parole Board currently, and for the past several years, has provided that parole for any sentence over 45 years, including a life sentence, is calculated based upon a sentence of 45 years."). Because Petitioner's must serve 85% of his three life sentences and his 20 year sentence all running consecutively, it is undisputed Petitioner will not be eligible for parole until he has served 131.75 years.

 Petitioner contends that his sentences, as applied, are materially indistinguishable from that presented to the Supreme Court in *Graham* and violate the holding of that decision because they do not provide a realistic opportunity to obtain release during his lifetime. (ECF No. 1: 8, 10). Petitioner urges this Court to find that the OCCA's decision as it relates to his imposed sentences is contrary to, and an unreasonable application of, *Graham* and requests habeas relief.

### 1. *Graham v. Florida*

In *Graham*, the petitioner was 16 years old when he committed armed burglary with assault or battery and attempted armed robbery. *Id.* at 53-54. Pursuant to a plea agreement, he was sentenced to concurrent 3-year terms of probation and the trial court withheld adjudication of guilt. *Id.* at 54. However, during his probation but while

still seventeen years old, the petitioner participated in two home invasions. *Id.* at 54-55. Because he violated the terms of his probation, the petitioner went back before the trial court on his previous armed burglary and attempted robbery charges. *Id.* at 55. The State recommended a total of 45 years for both counts but the trial judge, stating that 'this' was how the petitioner had chosen to live his life and there was nothing anyone could do to help him get on the right track, sentenced him to life imprisonment. *Id.* at 56-57. Because Florida had previously abolished its parole system, "a life sentence gives a defendant no possibility of release unless he is granted executive clemency." *Id.* at 57.

The petitioner appealed his sentence arguing it violated the Eighth Amendment's prohibition against cruel and unusual punishment. In analyzing the issue, the Court took the categorical approach, marking the first time it had extended this approach beyond the death penalty. *Id.* at 56-58.[4] Categorical restrictions on a particular sentence fall into two subsets: (1) the nature of the offense and (2) characteristics of the offender. *Id.* at 60-61. As to the former, the Court previously held that the Eighth Amendment forbids the imposition of the death penalty for non-homicide offenses. *Id.* at 61 (citing *Kennedy v. Louisiana*, 554 U.S. 437-38 (2008)). As to the latter, the Court previously held that the Eighth Amendment forbids the imposition of the death penalty for defendants who were juvenile offenders (less than 18 years of age) and for defendants

---

[4] Sentence challenges had previously fallen within two distinct categories: (1) straight proportionality challenges in which the court reviewed the length of a term-of-years sentence given all the circumstances in a particular case and (2) challenges to the application of particular sentences in certain categorical situations. *Id.*

who have a low IQ. *Id.* (citing *Roper v. Simmons*, 543 U.S. 551 (2005); *Atkins v. Virginia*, 536 U.S. 304 (2002), respectively).

In applying the categorical analysis, the Court first considers state "legislative enactments and state practice" to determine whether there is a national consensus against the sentencing practice at issue. *Id.* (citing *Roper,* 543 U.S. at 563). Second, the Court uses its own independent judgment to scrutinize the constitutionality of the sentence based upon its evolving standards and precedents. *Id.* (citing *Kennedy*, 554 U.S. at 421).

In considering national consensus, the Court noted six jurisdictions prohibit life without parole sentences for juvenile offenders and seven prohibit such sentences for juvenile non-homicide offenders. *Id.* at 62. Meanwhile, 37 states, the District of Columbia and federal law conceivably permit life without parole sentences for juvenile offenders in non-homicide crimes. *Id.* (citing 28 U.S.C. §§ 2241, 5032). Despite the availability of this option, the actual sentencing practice is rare. *Id.* Relying on a recent study and its own research, the Court noted that at the time of the decision, there were only 123 juvenile offenders - 77 of them in Florida - serving sentences of life without parole for non-homicide offenses. *Id.* at 62-64 (citing P. Annino, D. Rasmussen, & C. Ride, Juvenile Life Without Parole for Non-Homicide Offense: Florida Compared to Nation 2 (Sept. 14, 2009)).[5] *Id.* Only 11 jurisdictions nationwide were imposing life

---

[5] Incidentally, the Court also noted that since the study was completed "a defendant in Oklahoma has apparently been sentenced to life without parole for a rape and stabbing committed at the age of 16." *Id.* at 64 (citing Stogsdill, Delaware County Teen Sentenced in Rape, Assault Case, Tulsa World, May 4, 2010, p. A12)). The reference is to the Petitioner currently before this Court. As previously noted, the *Graham* opinion was prepared and issued while Petitioner's case was pending before the OCCA.

without parole sentences on juvenile non-homicide offenders, in spite of apparent widespread availability. *Id.* at 64, 67.

Turning to its own independent judgment, the Court considered the culpability of the categorical class, *i.e.*, juvenile non-homicide offenders, the severity of life without parole, and whether the sentencing practice serves legitimate penological goals. *Id.* at 67. In its analysis of class culpability, the Court relied upon the extensive physiological data cited in *Roper* establishing that juvenile offenders are fundamentally different from adult offenders for purposes of criminal sentencing. *Id.* at 67-69 (citing *Roper*, 543 U.S. at 568-70, 572-73 (prohibiting the death penalty for defendants who committed their crimes before age 18)).

Specifically, the Court explained, "[J]uveniles have a 'lack of maturity and an underdeveloped sense of responsibility'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.'" *Id.* at 68 (quoting *Roper*, 543 U.S. at 569–570).

> [D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. See Brief for American Medical Association et al. as *Amici Curiae* 16–24; Brief for American Psychological Association et al. as *Amici Curiae* 22–27. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. *Roper,* 543 U.S., at 570, 125 S.Ct. 1183. It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Ibid.*

*Id.* "It is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare

juvenile offender whose crime reflects irreparable corruption.'" *Id.* (quoting *Roper*, 543 U.S. at 573).

With regard to the nature of the offenses involved in juvenile cases, the Court relied upon its previous reasoning that those who commit non-homicide crimes are less deserving of the most severe punishment. *Id.* at 69 (citing *Kennedy*, 554 U.S. at 438). "Although an offense like robbery or rape is 'a serious crime deserving severe punishment,' those crimes differ from homicide crimes in a moral sense." *Id.* at 69 (quoting *Enmund v. Florida*, 458 U.S. 782, 797 (1982)). As for the severity of the punishment, the Court noted, "[L]ife without parole is 'the second most severe penalty permitted by law.'" *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). It is especially harsh for a juvenile offender as he "will on average spend more years and a greater percentage of his life in prison than an adult offender." *Id.*

Based largely upon these same principles and reasoning, the Court concluded that historically recognized penological justifications for certain sentences, including retribution, deterrence, incapacitation and rehabilitation, are insufficient to justify life imprisonment for a juvenile offender. *Id.* at 71. In so doing, the Court soundly rejected the trial court's rationale in sentencing the petitioner in *Graham*.

> To justify life without parole on the assumption that the juvenile offender forever will be a danger to society requires the sentencer to make a judgment that the juvenile is incorrigible. The characteristics of juveniles make that judgment questionable. …. As one court concluded in a challenge to a life without parole sentence for a 14–year–old, "incorrigibility is inconsistent with youth." *Workman v. Commonwealth*, 429 S.W. 2d 374, 378 (Ky. 1968).

.... Even if the State's judgment that Graham was incorrigible were later corroborated by prison misbehavior or failure to mature, the sentence was still disproportionate because that judgment was made at the outset.

*Id.* at 72-73.

Rehabilitation was also considered underserved by these sentences being applied against juvenile offenders as "the penalty forswears altogether the rehabilitative ideal." *Id*. at 73-74. In many prison systems, those serving sentences without chance of parole are denied access to rehabilitative services, including counseling, vocational training, or educational opportunities. *Id.* at 73, 79. The absence of the same makes the disproportionality of the sentences for juveniles, who already have more capacity for change and less moral culpability than adults, all the more evident. *Id.* at 73-74, 79.

While acknowledging the imperfect nature of categorical rules, the Court nevertheless concluded it was the best alternative as "[a] categorical rule gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform." *Id.* at 79.

Terrance Graham's sentence guarantees he will die in prison without any meaningful opportunity to obtain release, no matter what he might do to demonstrate that the bad acts he committed as a teenager are not representative of his true character, even if he spends the next half century attempting to atone for his crimes and learn from his mistakes. The State has denied him any chance to later demonstrate that he is fit to rejoin society based solely on a nonhomicide crime that he committed while he was a child in the eyes of the law.

*Id.* [6] The Court held that while the Eighth Amendment does not require a state to "guarantee the offender eventual release, ... if [the state] imposes a sentence of life it

---

[6] The Supreme Court also recognized international consensus against the sentencing practice, explaining that the United States was the only industrialized nation that imposed life without parole sentences on juvenile non-homicide offenders. *Id.* at 80-82.

must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id.* at 82.[7]

### 2. Application of *Graham* to Term-of-Years Sentences

To date, the Tenth Circuit has not addressed whether *Graham* applies to consecutive, term-of-years sentences. Two Circuit Courts, the Sixth and Ninth, as well as various lower courts, have confronted this question and drawn differing conclusions. In *Bunch v. Smith*, 685 F.3d 546 (6th Cir. 2012), the petitioner was 16 years old at the time of the underlying crimes and was sentenced to 10 years each for three counts of rape, 10 years each for three counts of complicity to commit rape, 10 years for aggravated robbery, 10 years for kidnapping and 180 days for misdemeanor menacing, all to run consecutively for a total of 89 years imprisonment. *Id.* at 548. In ruling that the petitioner's sentence and appellate court's upholding of the same was not contrary to *Graham,* the Sixth Circuit contended that the *Graham* petitioner was convicted to life without the possibility of release for one armed burglary conviction, whereas Bunch was sentenced to consecutive, fixed-term sentences – the longest of which was ten years – for committing multiple non-homicide offenses. *Id.* at 550-51.[8] "[I]n *Graham,* the Court said that a juvenile is entitled to [] a 'realistic opportunity to obtain release' if a state

---

[7] Since *Graham*, the Supreme Court has continued its decisional trend of providing more constitutional protections for juvenile offenders. In *Miller v. Alabama*, __ U.S. __, 132 S.Ct. 2455, 2457-58 (2012), the Court explicitly extended the reasoning of *Roper* and *Graham*, holding that a *mandatory* sentence of life without parole for juvenile homicide offenders also violates the Eighth Amendment's prohibition on cruel and unusual punishment.

[8] The Sixth Circuit's characterization of Petitioner's sentence is not entirely accurate. As previously discussed, the petitioner in *Graham* was sentenced for armed burglary and attempted robbery, *id.* at 57 (though the life sentence was limited to the former), and only after repeated and escalating criminal activity and a probation violation. *Id.* at 54-58.

imposes a sentence of 'life.' That did not happen in this case." *Id.* at 551 (internal citations omitted).

The Sixth Circuit further pointed out the Supreme Court's conclusion that there is a national consensus against the sentencing practice is based solely on sentences of 'life without parole' and did not discuss sentencing practices related to those having the 'functional equivalent' of life without parole, nor did the Supreme Court "even consider the constitutionality of such sentences." *Id.* at 552. The court also noted that state courts were split as to the application of *Graham* to consecutive, fixed term sentences and therefore, the petitioner's sentence could not be contrary to 'clearly established' federal law, as required for habeas relief. *Id.* (listing state cases illustrating differing conclusions regarding *Graham's* application to term-of-years sentences). Finally, the court stated that a contrary result would lead to unanswered questions regarding precisely what length of years is too long. *Id.*[9]

By contrast, the Ninth Circuit, in *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013) reached the opposite result. In *Moore*, the defendant was convicted of nine counts of forcible rape, seven counts of forcible oral copulation, two counts of attempted second

---

[9] Notably, in this regard, *Bunch* relied heavily on the reasoning of *Henry v. State*, 82 So.3d 1084, 1089 (Fla. Ct. App. 2012), in which the court stated, "There is language in the *Graham* opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is "life" or 107 years. Without any tools to work with, however, we can only apply *Graham* as it is written." However, that opinion has since been quashed by *Henry v. State*, 174 So. 3d 675 (Fla. 2015), which held *Graham's* constitutional prohibition against cruel and unusual punishment is implicated when a juvenile non-homicide offender's sentence does not afford any meaningful opportunity to obtain release. "Because Henry's *aggregate sentence*, which totals ninety years and requires him to be imprisoned until he is at least nearly ninety-five years old, does not afford him this opportunity, that sentence is unconstitutional under *Graham*." *Id.* at 679-80 (emphasis provided).

degree robbery, two counts of second degree robbery, forcible sodomy, kidnaping with the specific intent to commit a felony sex offense, genital penetration by a foreign object, and the unlawful driving or taking of a vehicle. *Id.* at 1186. These convictions were based upon the defendant sexually victimizing four separate women on four occasions during a five-week period while he was 16 years old. *Id.*

The record in *Moore* illustrated *Graham's* discussion regarding the inability of expert psychologists to determine whether a juvenile is capable of reform. Prior to the defendant's sentencing hearing, one psychologist on staff with the California Department of the Youth Authority found that "there is no reason to believe [the defendant] would not continue to be dangerous well into the future." *Id.* However, the remaining members of the clinical team as well as a casework specialist concluded that the defendant "has the mental and physical capacity to benefit from rehabilitation." *Id.* at 1186-87.

The trial judge agreed with the lone psychologist and sentenced the defendant to "consecutive sentences totaling 254 years and four months." *Id.* at 1187. Under California's penal code, the defendant would not be eligible for parole for 127 years and two months. *Id.* (citing Cal. Penal Code § 2933(a) (1991)). The California Court of Appeals held that *Graham* did not apply to consecutive term-of-years sentences and the California Supreme Court summarily denied review. *Id.*[10]

The Ninth Circuit ruled that the state appellate decision was contrary to *Graham* because the petitioner's consecutive, term-of-years sentence was materially

---

[10]  The federal district court dismissed Moore's habeas petition based on its ruling that *Graham* was not retroactive but the Ninth Circuit disagreed, as did both parties and every other court. *Id.* at 1187, 1190-91.

indistinguishable from the sentence presented in *Graham*. *Id.* at 1190. "Contrary to the California Court of Appeals' analysis, *Graham's* focus was not on the label of a 'life sentence' – but rather on the difference between life in prison with, or without, the possibility of parole." *Id.* at 1192.

> [W]e cannot ignore the reality that a seventeen year-old sentenced to life without parole and a seventeen year-old sentenced to 254 years with no possibility of parole, have effectively received the same sentence. Both sentences deny the juvenile the chance to return to society. *Graham* thus applies to both sentences. See *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied." (internal quotation marks and citation omitted))."

*Id.* The court also noted that the sentence at issue in *Graham* was also not formally life without parole but instead a de facto life without parole sentence due to Florida's lack of parole system. *Id.* at 1192, n.3.

The Ninth Circuit rejected the state court's conclusion that *Graham* was inapplicable because the nature of the underlying crimes differed. *Id.* at 1192. "*Graham* expressly rejected a case-by-case approach that 'would allow courts to account for factual differences between cases and to impose life without parole sentences for particularly heinous crimes.'" *Id.* at 1192-93 (quoting *Graham*, 560 U.S. at 77).

Lower courts have also split on the issue of whether *Graham* applies to consecutive, term-of-years sentences. Several courts have held consecutive, fixed-term sentences for juvenile non-homicide offenders are unconstitutional, pursuant to *Graham*. *See LeBlanc v. Mathena,* Civil Action No. 2:12CV340, 2015 WL 4042175, at *9-17 (E.D. Va. July 1, 2015) (finding state court's decision that juvenile sentenced to life

without parole who could apply for release under Virginia's Geriatric Release Program an unreasonable application of *Graham* and granting habeas relief); *Thomas v. Pennsylvania,* Civil No. 10–4537, 2012 WL 6678686, at *2 (E.D. Pa. Dec. 21, 2012) ("This Court does not believe that the Supreme Court's analysis would change simply because a sentence is labeled a term-of-years sentence rather than a life sentence if that term-of-years sentence does not provide a meaningful opportunity for parole in a juvenile's lifetime."); *U.S. v. Mathurin*, No. 09–21075–Cr, 2011 WL 2580775, at *3 (S.D. Fla. June 29, 2011) (holding a 307 year sentence against a juvenile offender unconstitutional under *Graham*); *People v. Caballero*, 282 P.3d 291, 295-96 (Cal. 2012) (holding a de facto life without parole sentence, including for example a sentence of 110–years–to–life, is constitutionally barred in juvenile non-homicide cases); *People v. Rainer,* __ P.3d ___, 2013 WL 1490107, at *14 (Col. App. 2013) ("Given what we view as the broad nature of *Graham's* directives, we conclude that the Court's holding and reasoning should apply to a sentence that denies a juvenile offender any meaningful opportunity for release within his or her life expectancy, or that fails to recognize that 'juveniles are more capable of change than are adults, and their actions are less likely to be evidence of irretrievably depraved character than are the actions of adults.'"); *Henry v. State*, 174 So. 3d 675, 679-80 (Fla. 2015) ("Because Henry's aggregate sentence, which totals ninety years and requires him to be imprisoned until he is at least nearly ninety-five years old, does not afford him this opportunity, that sentence is unconstitutional under Graham.").

Other courts have held *Graham* only applies to juvenile non-homicide offenders expressly sentenced to "life without parole." *See State v. Kasic*, 265 P.3d 410, 415-16 (Az. Ct. App. 2011) (holding that concurrent and consecutive prison terms totaling 139.75 years for a non-homicide child offender furthered Arizona's penological goals and was not unconstitutional under *Graham*); *Adams v. State*, 707 S.E. 2d 359, 365 (Ga. 2011) (relying on Justice Alito's dissent to hold that the majority does not "affect[] the imposition of a sentence to a term of years without the possibility of parole."); *Diamond v. State*, 419 S.W.3d 435 (Tex. Crim. App. 2012) (upholding a sentence of ninety-nine years for a non-homicide child offender without mentioning *Graham*).

### 3. Application of *Graham* to Petitioner's Sentence

The issue before this Court is limited to whether the OCCA's decision in applying *Graham* to Petitioner's sentences is contrary to, or an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254. The Supreme Court has emphasized that "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. 86, 102 (2011). In light of the abbreviated manner in which the OCCA addressed *Graham*, this Court can only speculate as to that court's underlying reasoning. We do know, however, that following the OCCA's application of *Graham*, Petitioner is under aggregate sentences that dictate he will serve over 130 years prior to being eligible for parole. His aggregate sentences are the functional equivalent of life

without parole, merely missing the label. The OCCA's application of *Graham* to Petitioner's sentence has provided a distinction without a difference. After analyzing the reasoning and analysis of the Supreme Court in *Graham*, as well as subsequent case law interpreting and applying the same, the undersigned finds that the OCCA's decision was contrary to, and an unreasonable application of, federal law and habeas relief is warranted.

The primary factors upon which *Graham* relied were: "the limited culpability of juveniles" as compared to adult offenders and the insufficiency of any penological theory to rationally justify "the severity of life without parole sentences." *Id.* at 74. The Court's concerns regarding juvenile culpability and inadequate penological justification apply equally to formal and de facto life without parole sentences. *Moore*, 725 F.3d at 1191; *Henry*, 174 So. 3d at 679-80; *Bear Cloud v. State*, 334 P.3d 132, 144 (Wyo. 2014). There is no basis within *Graham* to distinguish between sentences based solely upon their label.

Petitioner's consecutive term-of-years sentence effectively denies any possibility of parole and is no less severe than a formal sentence of "life without parole." Removing the label does not confer any greater penological justification, nor does it make a juvenile any more or less culpable as compared to an adult offender. *People v. Nunez*, 125 Cal. Rptr. 3d 616, 624 (Cal. Ct. App. 2011), *review dismissed*, 287 P.3d 71 (Cal. 2012). After *Graham*, finding a determinate sentence constitutional, based on nothing more than its label, that indisputably exceeds a juvenile offender's lifetime is wholly arbitrary and places semantics above thoughtful, legal reasoning. To hold

otherwise degrades the holding of the Supreme Court and ignores its directive that juveniles are constitutionally different from adults for purposes of sentencing. *Thomas* 2012 WL 6678686, at *2; *Nunez,* 125 Cal. Rptr. 3d at 624.

Furthermore, as other courts have noted, the sentence at issue in *Graham* was also merely the functional equivalent of life without parole. The petitioner's sentence was technically life imprisonment and only effectively became life without parole due to Florida's abolition of its parole system. *Graham*, 560 U.S. at 57; *Moore*, 725 F.3d at 1192 n.3. The *Graham* court framed the issue and its holding in terms of 'life without parole' because it recognized it as the petitioner's practical sentence. This is materially indistinguishable to Petitioner's sentences, which are de facto life without parole due to Oklahoma's 85% rule and the fact that the sentences are ordered to run consecutively.

Additionally, contrary to the Sixth Circuit's reasoning in *Bunch*, *Graham* does not support a distinction between consecutive sentences based on multiple offenses or victims and sentences based on one offense or victim. In *Graham*, the petitioner was a recidivist offender and the sentence at issue was based on an earlier charge and a subsequent parole violation for different offenses. *Id.* at 53-55; *Moore*, 725 F.3d at 1192 n.3. Aggregated sentences for multiple offenses do not change the constitutional principles underlying *Graham*. "While the sum of his conduct is more serious because he committed multiple offenses, and he is accordingly more culpable than a defendant who commits only a single offense, under *Graham* [and *Roper*] his culpability remains diminished as a juvenile. Accordingly, no penological justification supports a permanent denial of parole consideration." *Nunez*, 125 Cal. Rptr. 3d at 624. *See also Henry*, 174

So. 3d at 679-80 (finding aggregate sentences totaling 90 years unconstitutional under

*Graham*).

A Colorado court's discussion of the breadth and application of *Graham* is also

persuasive:

> In *Graham*, the Court did not employ a rigid or formalistic set of rules
> designed to narrow the application of the holding. Instead, it utilized broad
> language, condemning the sentence of life without parole in that case for
> qualitative reasons, such as because it 'gives no chance for fulfillment
> outside prison walls, no chance for reconciliation with society, no hope';
> because '[a] young person who knows that he or she has no chance to
> leave prison before life's end has little incentive to become a responsible
> individual'; and because the prison system itself sometimes reinforces the
> lack of development of inmates, leading to 'the perverse consequence in
> which the lack of maturity that led to an offender's crime is reinforced by the
> prison term.'

*People v. Rainer*, __ P.3d __, 2013 WL 1490107, at *13 (quoting *Graham*, 560 U.S. at

79).

More significant, the Supreme Court specifically rejected the idea of a case-by-

case approach requiring courts to simply consider age prior to sentencing a juvenile

non-homicide offender. *Graham,* 560 U.S. at 78. In so doing, the Court explained that it

would leave

> 'an unacceptable likelihood [] that the brutality or cold-blooded nature of
> any particular crime would overpower mitigating arguments based on
> youth as a matter of course, even where the juvenile offender's objective
> immaturity, vulnerability, and lack of true depravity should require a
> sentence less severe ....' Here, [] 'the differences between juvenile and
> adult offenders are too marked and well understood to risk allowing a
> youthful person to receive' a sentence of life without parole for a
> nonhomicide crime 'despite insufficient culpability.'

*Id.* (quoting *Roper,* 543 U.S. at 573) (internal citations omitted). This rationale,

wherein the Supreme Court pointedly avoided the possibility that *Graham's* reasoning

could be set aside based upon particularly brutal or heinous underlying crimes, renders unreasonable an application of *Graham* that draws a distinction between aggregate sentences based on multiple offenses and a sentence based on just one offense.

Moreover, the trial judge's language in this case when sentencing Petitioner implicates the very basis of the Supreme Court's holding in *Graham.* The Court found that the Eighth Amendment "forbid[s] States from making the judgment at the outset that" a juvenile convicted of non-homicide offenses "never will be fit to reenter society." *Id.* at 75. However, the state court here twice made the judgment that Petitioner would never be fit to reenter society. The state court first made that determination when it sentenced Petitioner to life without parole. During Petitioner's sentencing, the trial judge, in addition to questionable remarks related to Native Americans' tendencies toward alcoholism, stated the following:

> And, Counsel, Mr. Budder, I think you fall into that fourth class [of people who drink too much]. When you drink too much, you just get mean. Now, I really don't see from this pre-sentence investigation any redeeming value here other than your age. But the problem with that is you manage to score in the high percentile of recidivism, and if you don't understand what that word means, it basically means given the chance to commit a new crime or another crime, you wouldn't have any hesitation to do so. ....
> *I really don't see any reason to allow you back out of prison to get drunk and hurt somebody else. I just don't see it in this particular case.*

(Sent. Tr., p. 7-8) (emphasis provided). After announcing Petitioner's sentences, the trial judge stated further:

> It'll further be the sentence of this Court, I see no reason to run any of these concurrently. *I see no reason to allow you the opportunity to get out of jail.* Hopefully nobody else will get hurt at your hands. Now, that may not be a possibility within the custody of Department of Corrections,

but at least it won't be a private citizen. So all four of those will run consecutively.

****

Now, the only relief that this Court can see based upon the record before the Court is whether or not the Court of Criminal Appeals thinks that the sentences running consecutively are too severe. He may have an opportunity with them to get them to run concurrently, but he's not going to have that opportunity with this Court.

(Sent. Tr., p. 8-9) (emphasis provided). Second, the OCCA made that determination when it modified Petitioner's sentences to consecutive life sentences with the possibility of parole knowing that under Oklahoma's 85% rule, Petitioner would not be eligible for parole in his lifetime.

The Supreme Court in *Graham* addressed similar comments made by the sentencing court in Terrance Graham's case. *Graham*, 560 U.S. at 57 (reflecting upon the trial court's suggestion that Terrance Graham was beyond all hope of rehabilitation). The Supreme Court specifically forbid states from making this judgment "at the outset." *Id.* at 75. *See also id.* at 77 (recognizing that "existing state laws, allowing the imposition of these sentences based only on a discretionary, subjective judgment by a judge or jury that the offender is irredeemably depraved, are insufficient to prevent the possibility that the offender will receive a life without parole sentence for which he or she lacks the moral culpability"); *id.* at 78–79 (concluding that "[a] categorical rule avoids the risk that ... a court or jury will erroneously conclude that a particular juvenile is sufficiently culpable to deserve life without parole for a nonhomicide" offense).

The undersigned notes the concern raised by some courts that applying *Graham* to term-of-years sentences creates line-drawing problems related to how many years is too many for constitutional purposes. *See Bunch*, 685 F.3d at 552. It is undeniable that applying *Graham* to term-of-years sentences could and likely will generate significant questions. Indeed, questions have arisen regarding not only how many years is too many but what constitutes a meaningful opportunity for release. For example, in *LeBlanc*, the district court granted a writ of habeas corpus against the state court's decision upholding the petitioner's two life sentences without the possibility of parole because he could apply for release under Virginia's Geriatric Release Program upon reaching the age of sixty. The court determined that this was contrary to and an unreasonable application of *Graham* because it did not provide a "meaningful opportunity for release." *Id.*, 2015 WL 4042175, at *15.

Additionally, the question of a constitutionally acceptable 'number of years' has also presented a quandary for courts, though many have resolved this by relying upon the lifetime expectancy tables published by the Center for Disease Control and finding no constitutional violation if the defendant becomes eligible for parole within his or her expected lifetime. *See, e.g., Moulayi v. Long,* No. SA CV 13–31–JLS (PLA), 2015 WL 4273332, at *14 (C.D. Cal. Feb. 3, 2015) ("Because petitioner's sentence did not mandatorily impose life without parole and allows for the possibility of parole well within his expected lifetime, it does not violate constitutional norms."), report and recommendation adopted, 2015 WL 4304764 (C.D. Cal. July 10, 2015); *Silva v. McDonald,* 891 F.Supp.2d 1116, 1131 (C.D. Cal. 2012) ("Notwithstanding the holdings

in *Roper, Graham,* or *Miller*, this Court is not aware of any controlling Supreme Court precedent which holds, or could be construed to hold, that the sentence at issue here of 40–years–to–life with the possibility of parole [at the earliest at age 55, but not later than age 60], for a juvenile who was 16 years old at the time of the nonhomicide crime, violates the Eighth Amendment."); *People v. Perez,* 154 Cal. Rptr. 3d 114, 119–21 (Cal. Ct. App. 2013) (holding defendant had a meaningful opportunity to obtain release where sentence included parole eligibility at the age of 47; charted cases showing "remarkably consistent pattern" of lengthy sentences upheld under *Graham* and *Miller* where the petitioner has substantial life expectancy remaining at potential end of sentence); *People v. Lehmkuhl,* No. 12CA1218, 2013 WL 3584754, at *1–4 (Colo. App. June 20, 2013) (holding that a sentence where the defendant would be eligible for parole just under the age of 67 was not the functional equivalent of life without parole), *cert. granted by* No. 13SC598, 2014 WL 7331019 (Colo. Dec. 22, 2014)*; People v. Lucero,* No. 11CA2030, 2013 WL 1459477, at *3 (Colo. App. Apr. 11, 2013) (holding that 84–year sentence was not de facto life without parole sentence because defendant would be parole eligible by age 57—"well within his natural lifetime"), *cert. granted by* No. 13SC624, 2014 WL 7331018 (Colo. Dec. 22, 2014); *Angel v. Commonwealth*, 704 S.E. 2d 386, 402 (Va. 2011) (finding no *Graham* violation because defendant could petition for conditional release at age sixty [notably, this approach was rejected by *LeBlanc*]).

In any event, there are two reasons why these concerns do not affect Petitioner's request for habeas relief. First, in the present case, it is undisputed

Petitioner will not be eligible for parole during his lifetime. Thus, neither the OCCA nor this Court was presented with a question of whether 50, 60, 70 or any other number of years is too long. Petitioner is not eligible for parole for over 130 years. He is unquestionably denied the meaningful opportunity for release during his lifetime that *Graham* requires. *Id.* at 82.

Second, the Supreme Court anticipated that its categorical approach to life without parole sentences would be inevitably problematic but did not alter its ruling. "Categorical rules tend to be imperfect, but one is necessary here." *Id.* at 75. The Court discussed various alternatives to this approach that might otherwise avoid these kinds of issues, *id.* at 75-79, but concluded that the alternatives were "not adequate to address the relevant constitutional concerns." *Id.* at 75. The Court resolved these concerns by requiring that all juvenile non-homicide offenders be provided with the opportunity for parole, sentencing review hearings or other opportunity for release allowing them a chance to "demonstrate maturity and reform." *Id.* at 79.

Finally, in *Bunch*, the Sixth Circuit noted that when the Supreme Court concluded national consensus weighed against life without parole sentences for juvenile non-homicide offenders, it did not consider the prevalence of lengthy term-of-years sentences that added up to de facto life imprisonment, but limited its data to actual life without parole sentences. *Bunch*, 685 F.3d at 551-52. While this appears accurate, the Supreme Court was clear

> Community consensus, while 'entitled to great weight,' is not itself determinative of whether a punishment is cruel and unusual. *Kennedy*, 554 U.S. at 434 []. In accordance with the constitutional design, 'the task

of interpreting the Eighth Amendment remains our responsibility.' *Roper*, 543 U.S. at 575.

*Id.* at 67. This coupled with a reading of the *Graham* opinion as a whole leaves little question that the holding and its underlying reasoning are not negated by a lack of additional data related to aggregate sentences.

In reviewing a habeas petition, this Court does not decide whether it agrees with the relevant Supreme Court decision, nor whether it would have reached a similar decision if presented with the same facts. Its role is limited to determining whether the state court identified the correct governing legal principle and reasonably applied that principle to the facts of Petitioner's case. *Wiggins*, 539 U.S. 510 at 520. That is to say, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). In this regard, the Supreme Court has instructed, "In order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Id.* at 520-21 (internal citations omitted).

"The Supreme Court has reiterated that *Graham's* and *Roper's* 'foundational principle' is that 'children are constitutionally different' and warrant special consideration regarding sentencing." *LeBlanc*, 2015 WL 4042175, at *12 (quoting *Miller*, 132 S. Ct. at 2458). A lengthy term-of-years sentence prohibiting parole within the juvenile offender's lifetime has precisely the same effect that *Graham* prohibits. It imposes the second-harshest punishment on an offender whose culpability is diminished by his or

her youth. *Id.* at 67-69. It does so in the absence of sufficient penological justification and it deprives the juvenile offender of a meaningful opportunity to obtain release based on demonstrated reform, in direct contradiction to *Graham's* reasoning and mandate. *Id.* at 71-73, 79. "A sentencing scheme that applies the holding of *Graham* in a manner that contravenes *Graham's* foundational principle, that courts must account for differences between children and adults, evinces an unreasonable application of federal law." *LeBlanc*, 2015 WL 4042175, at *14 (citing *Wiggins*, 539 U.S. at 520).

The undersigned acknowledges that Petitioner may very well "turn out to be irredeemable, and thus deserving of incarceration for the duration of [his life]." *Graham,* 560 U.S. at 75. The Eighth Amendment does not foreclose the possibility Petitioner may remain behind bars for life, depending upon his own maturity, development and actions while imprisoned in taking advantage of those services that offer the possibility for him to demonstrate rehabilitation. *See id. at 74.* However, the holding and reasoning in *Graham* forbid states "from making the judgment at the outset that [Petitioner] never will be fit to reenter society," as the trial judge and the OCCA did in this case. *Id.* Petitioner's sentence, which from the outset fails to offer him any meaningful chance at parole during his lifetime, is an unreasonable application of *Graham* and "improperly denies [him] a chance to demonstrate growth and maturity" at any point during his lifetime, as required by federal law. *Id.* at 73.

## B. Ground Two: Ineffective Assistance of Counsel

On direct appeal, Petitioner raised four bases to argue that he was denied his Sixth Amendment right to effective assistance of counsel. In this proceeding, Petitioner raises

only two bases to support this ground for relief. Specifically, Petitioner claims that his defense counsel was ineffective because counsel failed to present any arguments to the jury as to why they should consider mitigating evidence in the sentencing determination, and also failed to offer such evidence. Additionally, Petitioner contends defense counsel was ineffective by failing to do the same during formal sentencing.

Ineffective assistance claims are analyzed under the now-familiar two-part test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). "First, [Petitioner] must show that counsel's performance was deficient." *Id.* at 687. To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness," or, in other words, that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id.* at 687, 688. Second, Petitioner must show that counsel's deficient performance prejudiced the defense. *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012) (citing *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)).

There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if it "might be considered sound trial strategy." *Id.* at 689. With respect to the second prong of the analysis, Petitioner must show that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

This Court's review of the OCCA's determination of Petitioner's ineffective assistance of counsel claim is subject to the deference due all state court decisions in the context of federal habeas review. However, when a state court's decision includes review of ineffective assistance of counsel claims, the pivotal question for a federal habeas court is "whether the state court's application of *Strickland* was unreasonable. This is fundamentally different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* at 105 (internal citations omitted).

### 1. Failure to Offer Mitigating Evidence to the Jury

Petitioner argues defense counsel was ineffective because she did not present evidence to the jury regarding his age, drug and alcohol addiction, time in a rehabilitation facility, chaotic and dysfunctional family, and that Petitioner experienced peer rejection, poor parental management and a lack of social support, has a borderline or below average intellectual functioning and was previously sexually abused, which Petitioner contends was confirmed in the pre-sentence investigation report. (ECF No. 1:11-17). Additionally, Petitioner argues that defense counsel should have made a plea for mercy to the jury. (ECF No. 1: 15-16).

In denying Petitioner relief on this claim, the OCCA stated, in relevant part, as follows:

> Appellant next argues counsel failed to present a complete defense by failing to offer admissible mitigating evidence and argument in regards to

29

the guilt/innocence determination. Specifically, Appellant asserts that counsel should have obtained an expert to explain the possible effects of alcohol, that counsel shouldn't have suggested in closing argument that Appellant did not rape the victim and that counsel should have asked the jury for mercy in sentencing. Appellant now asserts trial counsel's omissions failed to subject the State's case to proper 'adversarial testing.'

As addressed in Proposition II, since this is a non-capital case, Appellant was not legally entitled to present 'mitigating evidence.' *Malone*, 2002 OK CR 34, ¶¶ 6-7, 58 P.3d at 209-210. Therefore, counsel was not ineffective for failing to present evidence he was not legally entitled to present. ....

Despite the seemingly inadmissible nature of the evidence, Appellant stands firm in his argument that such evidence would have been relevant in the jury's ... determination of punishment. We fail to see the relevance of the evidence. Generally speaking, the possible side effects of alcohol are not a topic most laypeople need an expert to set out. Further, it is not clear from the record whether Appellant has been evaluated by any experts concerning the possible side effects of his consumption of alcohol. The relevance to the possible side effects of alcohol on someone other than Appellant is questionable. Additionally, while Appellant sees his alcohol consumption as an addiction, which with supporting evidence could have benefitted his defense, it can also be seen as voluntary conduct which results in Appellant harming others and the presentation of such evidence would be detrimental to Appellant. What could reasonably be viewed as mitigating evidence to one person may be viewed as aggravating evidence to another. *Murphy v. State*, 2002 OK CR 24, ¶ 54, 47 P.3d 876, 886-887.

The decision to call witnesses is a strategic decision which this Court will not second guess on appeal. *Matthews v. State*, 2002 OK CR 16, ¶ 32, 45 P.3d 907, 919. Based upon the record before us, counsel's decision to not call an expert on the side effects of alcohol consumption was reasonable trial strategy which we will not second guess. The record shows counsel extensively questioned Appellant on the amount of alcohol he drank the day and night of the party and the effects of that alcohol. Counsel sufficiently presented the issue for the jury's consideration. Appellant has failed to show that if counsel had presented any expert testimony, that the result of the trial could have been different.

\* \* \* \*

Appellant next argues counsel was ineffective for failing to make a plea of mercy before the jury. This was a one stage trial. For counsel to argue for minimal sentencing would have been inconsistent with Appellant's own

testimony that he did not attack the victim and would have been a concession of guilt. Counsel's argument regarding sentencing was a matter of trial strategy. Under the circumstances of this case, we find counsel's strategy reasonable and not subject to second guessing.

(ECF No. 20-4:23-26).

The undersigned does not find the OCCA's determination to be unreasonable. The OCCA considered the testimony and evidence presented at trial. The state court found it to be a reasonable decision for counsel to focus on a defense of actual innocence based on Petitioner's testimony. The reasonableness of this decision could also be further supported by evidence pertaining to the abbreviated medical examination conducted on the victim, lack of DNA evidence matching Petitioner to the DNA taken from the victim, and evidence suggesting that the victim's boyfriend actually assaulted the victim and set up Petitioner. (ECF No. 20-4:25).

Assuming without deciding that counsel were deficient for failing to present this type of mitigating evidence to the jury, Petitioner cannot demonstrate a reasonable probability that the evidence would have affected the jury's weighing of the evidence. Specifically, as other courts have observed, evidence of this sort has a "double-edged" quality. *Wackerly v. Workman*, 580 F.3d 1171, 1178 (10th Cir. 2009). That is, a jury presented with evidence that the defendant is a chronic substance abuser might draw a negative inference from that evidence just as easily as a jury might find it mitigating. *See Davis v. Exec. Dir. of Dep't of Corr.*, 100 F.3d 750, 763 (10th Cir. 1996) (finding the petitioner not prejudiced by counsel's failure to investigate and present expert testimony at sentencing on nature and effects of his severe alcoholism because whatever the

mitigating effect of such evidence, it was equally possible that jury would have faulted the petitioner for repeated failures to address problem).

Given the uncertainty about how a jury might receive this type of evidence, the undersigned cannot find Petitioner has demonstrated a reasonable probability that the jury would have reached a different sentencing result if it had been presented with evidence of Petitioner's history of alcohol and drug abuse and evidence that he had already been to a rehabilitation center. In light of the testimony related to the exorbitant amount of alcohol Petitioner consumed on the night at issue, if evidence had been presented to the jury that he had already been through treatment and counseling programs, it is reasonable to consider that the jury might have concluded Petitioner was beyond further rehabilitation. *See Cullen v. Pinholster*, 563 U.S. 170, 201 (2011) (stating new evidence of more serious substance abuse, mental illness, and criminal problems is "by no means clearly mitigating" because the jury might have concluded that the petitioner was simply beyond rehabilitation). *See also Sutton v. Bell*, 645 F.3d 752, 763 (6th Cir. 2011) (stating "[i]t is well established that ... extensive involvement with drugs" is "often viewed by juries as harmful," not mitigating); *Pace v. McNeil*, 556 F.3d 1211, 1224 (11th Cir. 2009) (finding that trial counsel's failure to present evidence of the petitioner's substance abuse was not deficient in part because "presenting evidence of a defendant's drug addiction to a jury is often a 'two-edged sword'; while providing a mitigating factor, such details may alienate the jury and offer little reason to lessen the sentence"); *DeLozier v. Sirmons*, 531 F.3d 1306, 1332 (10th Cir. 2008) (finding that appellate counsel's decision not to argue that trial counsel was ineffective for failing to put on evidence of the petitioner's substance

abuse was not ineffective assistance because such evidence can be considered a "two-edged" sword); *Jones v. Page*, 76 F.3d 831, 846 (7th Cir. 1996) (finding that counsel's failure to introduce evidence of the petitioner's drug abuse was reasonable strategic choice because such evidence was "double-edged sword").

The OCCA's conclusion that counsel's action in failing to offer mitigating evidence or ask the jury for mercy in sentencing was based entirely on trial strategy, and not any deficiency of performance, finds considerable support in the record. Thus, its determination that Petitioner failed to meet the *Strickland* standard for an ineffective assistance claim on this basis is neither contrary to nor an unreasonable application of clearly established Supreme Court authority. Petitioner's claim for habeas relief should be denied.

### 2. Failure to Offer Mitigating Evidence During Formal Sentencing

Petitioner complains that defense counsel was ineffective by failing to present evidence regarding his age, alcohol and drug addiction, troubled family life and alleged potential for rehabilitation during formal sentencing proceedings. (ECF No. 1:17-19). Petitioner also complains that defense counsel did not ask the judge to suspend a portion of his sentences or set them to run concurrently, in spite of the fact that the prosecution had asked the court to run Petitioner's sentences consecutively. (ECF No. 1:19).

Simultaneous with his direct appeal, Petitioner filed an Application to Supplement Appeal Record in Regard to Claim of Ineffective Assistant (sic) of Trial Counsel and Application for Evidentiary Hearing ("Application"), pursuant to Rule 3.11 of the Oklahoma

Court of Criminal Appeals. (ECF No. 26).[11] The Application relied upon records from mental health care providers, treatment centers and public schools to demonstrate to the OCCA that Petitioner's trial counsel had readily available evidence showing his chaotic and dysfunctional family life, struggles in academic settings and history of substance abuse. (ECF No. 26).[12] Petitioner argued that had defense counsel presented the evidence contained therein, there is a strong possibility the trial judge would have pronounced a lesser sentence because doing so would not have seemed as futile. (ECF No. 26:5).

The OCCA denied Petitioner's Application as well as Plaintiff's ground for relief. The explanation for its denial, though lengthy, bears quoting:

> Appellant next asserts counsel was ineffective for failing to present mitigating evidence and argument to the court at formal sentencing. Specifically, he argues that counsel could have presented to the court evidence contained within affidavits included in his contemporaneously filed *Application for Evidentiary Hearing on Sixth Amendment Grounds* ….
>
> Contrary to his earlier argument, Appellant admits that at formal sentencing counsel did argue there were "mitigating circumstances" for the court to consider before imposing sentence and these included Appellant's young age and the "ravages of alcohol and marijuana." (S. Tr. Pgs. 4-5). ….
>
> In his *Application to Supplement Appeal Record in Regard to Claim of Ineffective Assistance of Trail Counsel and Application for Evidentiary*

---

[11] Rule 3.11(B)(3)(b) and (B)(3)(b)(i) provides, "When an allegation of the ineffective assistance of trial counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence … and a proposition of error alleging ineffective assistance of trial counsel is raised in the brief-in-chief of appellant, appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel. …. In order to rebut the strong presumptions of regularity of trial proceedings and competency of trial counsel, the application and affidavits must contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence."

[12] Due to the sensitive materials contained within the Application, a copy of the same was filed with this Court under seal. (ECF Nos. 19, 24, 25).

*Hearing*, Appellant requests this Court allow supplementation of the record on appeal with documents which were not presented to the trial court but could have been presented through supporting witnesses at Appellant's formal sentencing. These documents include copies of Appellant's records from Cherokee nation Jack Brown Treatment Center; Kansas, Oklahoma, Public Schools; and Oklahoma Juvenile Authority. (Exhibits A-V).

As addressed in Proposition II, the parameters of formal sentencing are very limited. When a defendant has elected to have the jury determine punishment, as in Appellant's case, state statutes do not allow for the presentation of 'mitigation evidence' in a non-capital case such as Appellant's. *See Malone*, 2002 OK CR 24, ¶¶ 6-7, 58 P.3d at 209-210 *citing* 22 O.S. 2001, §§ 970-973. Prior to the trial court's pronouncement of the sentence, the defendant may offer any legal cause limited to either a reasonable ground for believing the defendant is insane or ground that would support a motion for new trial. *Id.* If no such legal cause is shown, the trial court must pronounce sentence. *Id.*

Appellant had no legal grounds to present 'mitigating evidence' to the jury. Therefore, we will not find counsel ineffective for failing to present evidence [s]he was not legally able to present. Reviewing the affidavits submitted by Appellant in his Application for Evidentiary Hearing, they concern Appellant's history of alcohol abuse, troubled home life, school discipline and behavioral problems, and in-patient treatment with Oklahoma Juvenile Authority. None of the affidavits contain any information which supports a claim that Appellant was insane or that a new trial is warranted.

Appellant insists that had the trial judge had some documentation of Appellant's troubled history and some scientific evidence, he would not have relied on his own personal experience in rendering sentencing. As discussed above, the evidence Appellant now offers was not the kind of evidence which could be presented at formal sentencing. Further, the judge did not merely rely on his own personal experiences in imposing sentence. In pronouncing sentencing, the judge made his feelings about the case quite clear. He commented that after sitting through the jury trial and reviewing the Presentence Investigation Report (PSI), "this is probably the cruelest case that I have ever presided over in the twelve years I have been here. Short of killing the victim, I don't know that there was any more degradation that could be heaped upon this victim that [sic] what was heaped upon her during this episode." (S.Tr. pg.6). The judge momentarily injected a personal note that he had family members who were half Native American and had trouble with alcohol. However, he did not attribute Appellant's alcohol problems with the fact he was Native American. Rather, based upon findings in the PSI and evidence at trial, the judge said that Appellant was

one of those people that when they drink too much alcohol, they "want to hurt somebody". The judge told Appellant, "when you drink too much, you just get mean". (S. Tr. Pg. 7). The judge went on to state that Appellant's age was the only redeeming value and the PSI indicated Appellant was a likely repeated offender. The judge said he found no reason to allow Appellant out of prison "to get drunk and hurt somebody else." (S.Tr. pgs. 7-8). Appellant has failed to show that any evidence he now offers would have had any impact at formal sentencing.

Having thoroughly reviewed the evidence contained in the affidavits attached to the Application for Evidentiary Hearing, we find Appellant has failed to show by clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to present evidence he was not legally able to present at formal sentencing. His request for an evidentiary hearing on this issue is **DENIED**.

* * * *

Having thoroughly reviewed Appellant's claims of ineffective assistance of counsel, we find Appellant has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this specific evidence. Merely because appellate counsel may have defended the case in a different manner is not grounds for finding trial counsel ineffective. *See Shultz v. State*, 1991 OK CR 57, ¶ 9, 811 P.2d 1322, 1327. This proposition is denied.

(ECF No. 20-4:26-29, 30).

Petitioner appears to ask this Court to undertake a *de novo* review of his ineffectiveness of trial counsel claim on the ground that the OCCA's disposition rested on Rule 3.11's clear and convincing standard rather than the analysis mandated by the Supreme Court in *Strickland*. (ECF No. 1:20-21). However, as the OCCA explained in *Simpson v. State of Okla.*, 230 P.3d 888 (Okla. Crim. App. 2010), "When we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we necessarily make the adjudication that Appellant has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*." *Id.* at 906. *Simpson* also confirmed that when evaluating an

application under Rule 3.11, the OCCA thoroughly examines the non-record evidence. *Id.* at 905.

The Tenth Circuit has held that, given the OCCA's assurances in *Simpson*, as a matter of federal law, "any denial of a request for an evidentiary hearing on the issue of ineffective assistance of counsel filed pursuant to OCCA Rule 3.11 ... operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1)." *Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013). Accordingly, the OCCA's ineffectiveness determination in this case would be entitled to AEDPA deference even had the OCCA not made explicit its finding that Petitioner had failed to meet his *Strickland* burden. (ECF No. 20-4:30).

Looking now to the merits of Petitioner's ground for relief, as noted by the OCCA, defense counsel did in fact argue for a reduced sentence based on mitigating evidence. During formal sentencing, defense counsel made the following argument to the trial judge:

> We ask the Court to take into consideration as to mitigating circumstances two things. This young man is now 17 years old. He was 16 years old at the time of the offense. He turned 17 in January of this year. Clearly according to the PSI and some of the evidence presented at trial, his home life, his upbringing was certainly unstructured, lacking in stability, and any kind of positive influence or direction.
>
> Secondly, alcohol was obviously involved in this offense, your Honor. It's clear from the testimony, including the Defendant's own testimony, that he had ingested an incredible amount of alcohol on the day and evening of the event.
>
> The PSI on page 13, I want to draw your attention to that, [Petitioner] says when he participated in rehabilitation, I'm on the top paragraph on page 13, your Honor, he had participated in rehabilitation through the Office of Juvenile Affairs. He likes treatment. It helped while he was there and he

wished he could have stayed longer. He acknowledges he has a substance abuse problem and wants to participate in further counseling. We ask that you consider that in determining your sentence. Directing if you will his participation in all available alcohol and drug abuse programs whether he is incarcerated or whether he is allowed community sentencing, your Honor.

(Sent. Tr., p. 4-5). Notably, defense counsel raised Petitioner's age and history of substance abuse, as well as his history of substance abuse treatment and the instability that pervaded his childhood.

Petitioner's argument here is that if defense counsel had presented the documentary evidence attached to his Application to support these arguments, the trial judge might have handed down a lesser sentence. To prevail on his ineffective assistance claim, Petitioner must show that but for counsel's actions, there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. As noted by the OCCA, it is highly unlikely Petitioner's evidence would have even been admissible but presuming it was, Petitioner has presented no evidence to support his conclusion, beyond his own conjecture, that such evidence would have resulted in a lesser sentence. Petitioner cannot show prejudice under *Strickland* based solely on his own unfounded speculation that the trial judge would have been swayed by documentary evidence reflecting arguments already presented to court.

Finally, Petitioner's argument that defense counsel was ineffective by failing to request a suspended sentence or for the sentences to run concurrently is also without merit. On appeal, the OCCA ruled:

However, Appellant argues counsel was ineffective for failing to present any evidence in support of his arguments, evidence which could have "provided the court with a balanced view of the pros and cons of running Appellant's

sentences concurrently and ordering treatment through incarceration." (Appellant's brief, pg. 41).

Finally, Appellant finds counsel ineffective for failing to argue that the sentences should be run concurrently. Based upon the trial court's comments at sentencing, any such request for concurrent sentences would have been overruled. Appellant has not shown any prejudice by counsel's omissions.

(ECF No. 20:26-27, 30). The OCCA noted that based upon the trial judge's statements regarding the bases for Petitioner's sentence, including specifically the severity of the crime, it is exceedingly unlikely that any such request on the part of defense counsel would have been granted. The OCCA's determination that Petitioner cannot show he suffered prejudice due to defense counsel's failure to make either of these requests during sentencing was reasonable. *See Harrington*, 562 U.S. at 101. Accordingly, Petitioner's request for habeas relief should be denied.

## V. RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be **GRANTED in part and DENIED in part**. Specifically, the undersigned recommends that the Petition be **GRANTED** with regard to Petitioner's Ground One claim that his sentence is unconstitutional under the Eighth Amendment and the case be **REMANDED** to the state court for re-sentencing based upon the Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010) and the principles espoused herein. Additionally, the undersigned recommends the Petition be **DENIED** with regard to Ground Two based upon Petitioner's claim of ineffective assistance of counsel.

## VI.  NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **January 4, 2016**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VII.  STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on December 17, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE