# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| KEIGHTON BUDDER, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
| vs. | ) | NO. CIV-13-0180-HE |
|  | ) |  |
| MIKE ADDISON, Warden, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## ORDER

Petitioner, Keighton Budder, a state prisoner, filed this action seeking habeas relief pursuant to 28 U.S.C. § 2254. He claims his sentences are unconstitutional and that he received ineffective assistance of counsel in conjunction with his sentencing. Consistent with 28 U.S.C. §636(b)(1)(B), (C), the matter was referred for initial proceedings to Magistrate Judge Shon T. Erwin, who has recommended that the petition be granted in part and denied in part. While the magistrate judge rejected petitioner's claim that his counsel was ineffective, he concluded, relying on Graham v. Florida, 560 U.S. 48 (2010), that petitioner's aggregate life sentences for crimes he committed as a juvenile violate the Eighth Amendment's prohibition on cruel and unusual punishment.

### Background

In April 2010 petitioner was convicted by a jury in Delaware County, Oklahoma of two counts of first degree rape, one count of assault and battery with a deadly weapon and one count of forcible oral sodomy.[1] Petitioner, who at that time was 16 years old, had been

---

[1] The facts are taken from the Oklahoma Court of Criminal Appeals's opinion. Doc. #20-4. Page references are to the CM/ECF document and page number.

an uninvited guest at a party at the home of K. J., the 17 year old victim. When the party ended, K. J. offered to drive guests home. She ended up alone with petitioner in her mother's car on a dirt road, using directions he had given her. Petitioner cut K. J.'s throat and stabbed her repeatedly on her stomach, arms and legs. After she dove out of the moving car, petitioner raped K. J. and forced her to sodomize him. Following the jury's recommendation, the trial judge sentenced petitioner to life imprisonment without parole on each of the rape counts, life imprisonment on the assault and battery count and twenty years imprisonment on the sodomy count, with the sentences to be served consecutively.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals ("OCCA"). He argued that being "sentenced to spend the entire remainder of his life in prison with no opportunity of hope of release" for nonhomicide offenses was unconstitutional in light of Graham, which was decided a few days after his sentencing. Doc. #20-1, p. 15. In Graham the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Graham, 560 U.S. at 82. The Court stated that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id*. The State of Oklahoma conceded that Graham required that petitioner's sentences of life without parole be modified. Concluding that Graham applied retroactively to petitioner, the OCCA modified petitioner's sentences on the rape convictions to life imprisonment with the possibility of parole. In all other respects the OCCA affirmed petitioner's convictions and

2

sentences, which were left to run consecutively. Petitioner then filed a petition for rehearing, asserting that the OCCA had not addressed all of his arguments based on Graham. The OCCA denied the petition stating that the court had fully considered all of the issues presented.

Petitioner asserts two grounds in support of his petition. In his first ground he claims that because he will not be eligible for parole until he has served 131.75 years, his consecutive life sentences, even if not labeled life without parole, violate Graham because they do not provide him with a realistic and meaningful opportunity for release. In his second ground petitioner contends that his trial attorney was ineffective because she failed to present mitigating evidence for the jury to consider in conjunction with sentencing and failed to argue to the jury why it should consider such evidence in its sentencing determination if it convicted him.

## Analysis

Petitioner did not object to the magistrate judge's recommendation that his petition be denied with respect to his claim of ineffective assistance of counsel. He thereby waived his right to appellate review of the factual and legal issues that section of the Report and Recommendation addressed, which the court adopts. Casanova v. Ulibarri, 595 F.3d 1120, 1123 (10th Cir. 2010); *see* 28 U.S.C. §636(b)(1)(C). That leaves the more difficult question of whether the OCCA's decision is contrary to Graham on the basis that petitioner's life sentences, when run consecutively, are the functional equivalent of the sentence determined by the Supreme Court to be unconstitutional.

Standard of Review

Because the OCCA decided petitioner's Eighth Amendment claim on the merits, the court can grant relief only if the OCCA's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2] "Whether the law is clearly established is <u>the</u> threshold question under § 2254(d)(1)." House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (quoting Williams v. Taylor, 529 U.S. 362, 380 (2000)). Supreme Court, not other appellate court, decisions, determine clearly established law. *Id.* And the "Supreme Court holdings . . . must be must be construed narrowly and consist only of something akin to on-point holdings." *Id.* "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice." *Id.* at 1016. While "the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context." *Id.* As explained by the Supreme Court in Wright v. Van Patten, 552 U.S. 120, 125 (2008), a state court does not unreasonably apply clearly established law unless a Supreme Court decision "squarely addresses the issue" or a case gives a "clear answer to the question presented."

The Supreme Court concluded in Graham that the Eighth Amendment prohibits a

---

[2]*Although habeas relief is also available under 28 U.S.C. § 2254(d)(2) if the petitioner can show that the "adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," petitioner's remaining claim asserts only a legal error.*

sentence of life without the possibility of parole for a juvenile who commits a nonhomicide offense.[3] Graham had been arrested for attempting to rob a restaurant with three other youths. Although he was 16 at the time of the attempted robbery, he was charged as an adult. He pleaded guilty to armed burglary with assault or battery and attempted armed robbery pursuant to a plea agreement. The state trial court withheld adjudication of guilt as to both charges and sentenced Graham to concurrent three-year terms of probation. When less than six months later Graham violated the terms of his probation by committing additional crimes,[4] the trial court revoked his probation and found him guilty of the earlier charges. Graham was eligible under Florida law to receive a minimum sentence of five years imprisonment and the state recommended a 30 year prison term on the armed burglary count and a 15 year term on the attempted robbery count. The trial court sentenced him to the maximum sentence authorized on each charge, which was life imprisonment for the armed burglary and 15 years for the attempted robbery, on the basis that it viewed Graham as incorrigible. Graham, 560 U.S. at 76. As Florida had abolished its parole system, a defendant given a life sentence had no possibility of release unless granted executive clemency. Graham's Eighth Amendment challenges to his sentence in state court were unsuccessful and the Supreme Court granted *certiorari*.

---

[3]In *Miller v. Alabama,* 567 U.S. ___ , 132 S.Ct. 2455 (2012), the Supreme Court "extended the reasoning in *Graham* to mandatory sentences of life without parole for juveniles convicted of homicide offenses." *Bunch v. Smith*, 685 F.3d 546, 553 (6th Cir. 2012).

[4]The court found that Graham had committed a home invasion robbery, possessed a firearm and associated with persons engaged in criminal activity. *Graham*, 560 U.S. at 55.

5

Noting that the case involved "a categorical challenge to a term-of-years sentence"[5] and "implicate[d] a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes," Graham, 560 U.S. at 61, the Supreme Court began its analysis of the constitutionality of Graham's sentence by considering whether a community consensus had developed against sentencing juvenile nonhomicide offenders to life without parole. Relying on actual sentencing practices – the minimal number of juvenile nonhomicide offenders serving life without parole sentences nationwide – the Court concluded "'it is fair to say that a national consensus has developed against it.'"[6] Graham, 560 U.S. at 67 (quoting Atkins v. Virginia, 536 U.S. 304, 316 (2002)).

The Court then proceeded to consider the culpability of the offenders, the severity of the punishment and whether the challenged sentencing practice serves legitimate penological goals, stating that "[c]ommunity consensus, while 'entitled to great weight' is not itself determinative of whether a punishment is cruel and unusual." Graham, 560 U.S. at 67 (quoting Kennedy v. Louisiana, 554 U.S. 407, 434 (2008)). Citing Roper v. Simmons, 543

---

[5]*To determine whether a sentence is so grossly disproportionate to the crime that it amounts to cruel and unusual punishment, the Supreme Court uses two classifications. Moore v. Biter, 725 F.3d 1184, 1188 (9th Cir. 2013). "The first classification 'involves challenges to the length of term-of-years sentences,' where the court considers 'all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive.'" Id. (quoting Graham, 560 U.S. at 59). "The second classification of cases . . . "use[s] categorical rules to define Eighth Amendment standards." Graham, 560 U.S. at 60. All "previous cases in this classification involved the death penalty." Id.*

[6]*While thirty-seven States, the District of Columbia and federal law permitted sentences of life without parole for juvenile nonhomicide offenders, the actual sentencing practice was rare. Graham, 560 U.S. at 62-63. State legislatures appear to have a very limited role in expressing, for Eighth Amendment purposes, what the community thinks.*

U.S. 551 (2005), the Court said it had already been established that juveniles "are less deserving of the most severe punishments" because, "[a]s compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed." Graham, 560 U.S. at 68 (internal quotation marks omitted). With respect to the severity of the sentence, the Court recognized that "[l]ife without parole is an especially harsh punishment for a juvenile," because "a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender." Id. at 70. It then concluded that the challenged sentencing practice did not serve the legitimate penological goals of retribution, deterrence, incapacitation and rehabilitation. That determination, coupled with "the limited culpability of juvenile nonhomicide offenders; and the severity of life without parole sentences all lead," the Court stated, "to the conclusion that the sentencing practice under consideration is cruel and unusual." Id. at 74. The Court "[held] that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." Id.

The State of Oklahoma does not dispute that, because petitioner's sentences run consecutively rather than concurrently, petitioner will have to serve 131.75 years before he will be eligible for parole.[7] His sentences therefore amount to the functional equivalent of

---

[7]*Parole eligibility for a life sentence under Oklahoma law is calculated on a sentence of 45 years. Anderson v. State, 130 P.3d 273, 282 (Okla. Crim. App. 2006). Petitioner must serve 85% of each sentence before being eligible for parole consideration. 21 Okla. Stat. §§ 12.1, 13.1.*

life without parole. However, applying the standard noted above – that the Supreme Court holding must be narrowly construed in this context – the court concludes the OCCA's determination was not contrary to "clearly established" law. In reaching that conclusion, the court finds persuasive the reasoning of the Sixth Circuit Court of Appeals in a similar context. In Bunch v. Smith, 685 F.3d 546 (6th Cir. 2012), that court determined that Graham "does not clearly establish that consecutive, fixed-term sentences for juveniles who have committed multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole." *Id.* at 547. While Bunch involved consecutive fixed-term sentences, and this case involved consecutive life terms with possible parole, the distinction has no significance for present purposes.[8] Because of their aggregate sentences, neither will be given "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Graham, 560 U.S. at 75.

The defendant in Bunch had been convicted in Ohio state court of robbing, kidnaping and repeatedly raping a young woman when he was 16 years old.[9] The trial court sentenced him to consecutive, fixed terms of imprisonment totaling 89 years, stating: "I just have to make sure that you don't get out of the penitentiary. I've got to do everything I can to keep

---

[8]*In Graham the Supreme Court construed the phrase "term of years" to include a life sentence. Graham, 560 U.S. at 70 (the Court noted that "the only previous case striking down a sentence for a term of years as grossly disproportionate," was Solem v. Helm, 463 U.S. 277 (1983), which involved a sentence of life imprisonment without parole).*

[9]*Bunch was found guilty of three counts of rape, three counts of complicity to commit rape, one count of aggravated robbery, one count of conspiracy to commit aggravated robbery, one count of kidnaping, one count of misdemeanor menacing, and related firearm specifications. The conspiracy conviction was vacated on appeal but the other convictions were affirmed.*

you there, because it would be a mistake to have you back in society." *Id.* at 548.[10] The Ohio Court of Appeals rejected Bunch's argument that the trial court violated the Eighth Amendment by sentencing him to 89 years imprisonment, the functional equivalent of life without parole for crimes he committed as a juvenile, and the Ohio Supreme Court denied his petition for discretionary review. Bunch then raised the Eighth Amendment issue in a § 2254 habeas petition. The district court denied Bunch habeas relief and the Sixth Circuit affirmed, noting that while Bunch and Graham were both juvenile offenders who did not commit homicide, it was there that the similarities ended. Graham had been sentenced to life in prison for committing one nonhomicide offense, while Bunch "was sentenced to consecutive, fixed-term sentences – the longest of which was 10 years – for committing multiple nonhomicide offenses." Bunch, 685 F.3d at 551. The Sixth Circuit stated that the Court in Graham had both "made it clear that '[t]he instant case concerns <u>only</u> those juvenile offenders sentenced to <u>life without parole</u> solely for a nonhomicide offense,'" and "stressed that drawing a 'clear line'" was required to prevent juvenile nonhomicide offenders from being sentenced to life without parole when they were "'not sufficiently culpable to merit that punishment.'" *Id.* (quoting Graham, 560 U.S. at 74).

Because "no federal court [had] ever extended Graham's holding beyond its plain language to a juvenile offender who received consecutive, fixed-term sentences," the Sixth

---

[10]*The trial judge made similar remarks during petitioner's sentencing. He commented: "I really don't see any reason to allow you [petitioner] back out of prison to get drunk again and hurt somebody else. I just don't see it in this particular case. . . . I see no reason to allow you the opportunity to get out of jail." Sentencing Transcript, p.8*

9

Circuit concluded that Bunch's sentence was not contrary to clearly established federal law. *Id*. The appellate court found that the Supreme Court's analysis in Graham supported its decision because that "analysis did not encompass consecutive, fixed-term sentences." *Id.* In determining the nation's views on the imposition of life sentences on juveniles of nonhomicide crimes, the Supreme Court "did not analyze sentencing laws or actual sentencing practices regarding consecutive, fixed-term sentences for juvenile nonhomicide offenders." *Id*. at 552. That demonstrated, the Sixth Circuit concluded, "that the Court did not even consider the constitutionality of such sentences, let alone clearly establish that they can violate the Eighth Amendment's prohibition on cruel and unusual punishments." *Id.*

The Sixth Circuit found further support for its conclusion due to the split in the courts across the country "over whether Graham bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy." *Id.* Some courts have held that "nothing in Graham addresses a defendant convicted of multiple offenses and given term of year sentences." State v. Brown, 118 So.3d 332, 342 (La. 2013).[11] Others, including the Ninth

---

[11]*In an unpublished decision, United States v. Walton, 537 Fed. Appx. 430 (5th Cir 2013) (per curiam), the Fifth Circuit rejected, under plain error review, an Eighth Amendment challenge to a forty year federal sentence imposed on an offender for crimes committed as a juvenile, stating that Graham did not apply to the defendant's "discretionary federal sentence for a term of years." and that the defendant was "attempt[ing] to raise novel constitutional arguments that would require the extension of precedent." Id. at 437. The Fourth Circuit stated in dicta that "[t]he Supreme Court has not yet decided the question whether a lengthy term-of-years sentence is, for constitutional purposes, the same as a sentence of life imprisonment without the possibility of parole." United States v. Cobler, 748 F.3d 570, 580 n.4(4th Cir. 2014), cert. denied, 135 S.Ct. 229 (2014). Accord Vasquez v. Com.,, ___ S.E.2d ___, 2016 WL 550280, at \*4 (Va. Feb. 12, 2016) ("Nowhere did Graham address multiple*

10

Circuit, *see* Moore v. Biter, 725 F.3d 1184 (9th Cir. 2013),[12] have held that an aggregate term-of-years sentence that exceeds a juvenile's life expectancy "is a de facto life without parole sentence and therefore violates the spirit, if not the letter, of Graham." Bunch, 685 F.3d at 552. There is language in Graham that arguably supports that conclusion, but none that makes clear that the Supreme Court's ruling extends to consecutive term-of-years or life sentences for juvenile nonhomicide offenders.

Moreover, petitioner's argument is contrary to the traditional focus of Eighth Amendment analysis, which, the Tenth Circuit has repeatedly stated, is "on the sentence imposed for each specific crime, not on the cumulative sentence or multiple crimes." Hawkins v. Hargett, 200 F.3d 1279, 1285 n.5 (10th Cir, 1999) citing O'Neil v. Vermont, 144 U.S. 323, 331 (1892) ("If [the defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offences."). *But cf.* Lockyer v. Andrade, 538 U.S. 63 (2003). Petitioner, like the habeas petitioners in Hawkins, Patrick v. Patton, ___

---

*term-of-years sentences imposed on multiple crimes that, by virtue of the accumulation, exceeded the criminal defendant's life expectancy."); Bear Cloud v. State, 334 P.3d 132, 141 (Wyo.2014) ("The United States Supreme Court has not, however, decided whether its rationale in the line of cases summarized above [including Graham] applies to cases such as this, where aggregate sentences result in what is for practical purposes a lifetime in prison.").*

[12]*The Ninth Circuit attempted to distinguish Bunch by asserting that Moore's sentence was "significantly different" than the sentence addressed by the Sixth Circuit in Bunch." Moore, 728 F.3d at 1194 n.6. The Ninth Circuit stated that the 89-year aggregate sentence in Bunch "provided for some possibility of parole." Id. The court disagrees. The Sixth Circuit stated "[t]o be sure, Bunch's 89-year aggregate sentence may end up being the functional equivalent of life without parole," Bunch, 685 F.3d at 551, decided the case under that assumption, and stated in a footnote: "Bunch claims, and the Warden does not dispute, that under Ohio's recently revised sentencing laws, he will be at least 95 years old before he is eligible for release from prison." Id. at 551 n.1.*

Fed. Appx. \_\_\_, 2015 WL 9239238, at *2 (10th Cir. Dec. 17, 2015)[13] and other Tenth Circuit cases, *e.g.* Powers v. Dinwiddie, 324 Fed. Appx. 702, 705 (10th Cir. 2009), does not challenge the constitutionality of any individual sentence. Rather he contends that serving the terms of multiple sentences consecutively makes his sentences violate the Eight Amendment. In Graham only one sentence – life imprisonment without parole – was being reviewed.

The Supreme Court may eventually read or expand Graham such that, regardless of the number of offenses committed or the sentences imposed, every juvenile must be eligible for parole within his or her lifetime. However, it has not done so yet and that "expansive reading of Graham is not clearly established." Bunch, 685 F.3d at 552. *See* House, 527 F.3d 1016. Further, the court is confronting the issue of the constitutionality of petitioner's sentences on habeas review, constrained by AEDPA's "highly deferential standard . . . [which] demands that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). Applying the applicable standards, the court concludes petitioner's sentences do not violate clearly established law.

## Conclusion

The court adopts the magistrate judge's Report and Recommendation insofar as it recommends that petitioner's second ground for relief, based on alleged ineffective assistance

---

[13]The petitioner in *Patrick* was not a juvenile, but was claiming that "it [was] cruel and unusual to make him serve consecutive sentences [for multiple convictions] because he [would] be elderly after serving only a portion of his sentence." *Patrick*, 2015 WL 9239238, at * 1.

of counsel, be denied. That aspect of the Report and Recommendation was not contested by petitioner. The court declines to adopt the Report as to the Eighth Amendment challenge. Having conducted the required *de novo* review of Mr. Budder's petition, the court concludes he is not entitled to habeas relief.

Accordingly, the § 2254 petition for writ of habeas corpus is **DENIED**. A certificate for writ of appealability is **GRANTED** as to petitioner's first ground for relief, in which he claims that his sentences violate the Eighth Amendment.

**IT IS SO ORDERED**.

Dated this 8th day of March, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE